E-FILED
Monday, 31 January, 2022  11:52:53 AM
Clerk, U.S. District Court, ILCD

AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

FILED

# UNITED STATES DISTRICT COURT

for the

Central District of Illinois

JUN - 3 2021

CLERK OF COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

|  |  |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) )  Case No. 21- *6098* |
| A BLACK FLASH DRIVE WITH AN ORANGE TAG WHICH SAYS, "ALAN LIPHART CELL IMAGE" CURRENTLY LOCATED AT THE USSS RI Office | ) ) ) ) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Please see Attachment A

located in the _____ Central _____ District of _____ Illinois _____ , there is now concealed *(identify the person or describe the property to be seized)*:

Please see Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 2422(b) | Enticement |
| 18 USC 2252A(a)(2) | Receipt of Child Pornography |
| 18 USC 2252A(a)(5) | Possession of Child Pornography |

The application is based on these facts:

Please see attached affidavit.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

s/Cristopher Berry

*Applicant's signature*

SA Cristopher Berry

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ Telephone _____ *(specify reliable electronic means)*.

s/Jonathan E Hawley

*Judge's signature*

Date:  06/03/2021

City and state:  *Peoria, IL*

Hon. Jonathan E. Hawley, U.S. Magistrate Judge

*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF A BLACK FLASH DRIVE WITH AN ORANGE TAG WHICH SAYS, "ALAN LIPHART CELL IMAGE" CURRENTLY LOCATED AT THE US SECRET SERVICE QUAD CITIES DOMICILE OFFICE | Case No. 21-mj-_____ |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Cristopher T. Berry, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.      I am a Special Agent with the United States Secret Service, and have been since July 2004.  I am a graduate of the Federal Law Enforcement Training Center and the US Secret Service JJ Rowley Training Center.  I have completed numerous training courses related to electronic crimes and computer devices.  Most notably, in 2006, I completed training related to investigations of computer network intrusions.  Previously, I was a Police Officer for the City of Creve Coeur, MO, from 1998-2004.  I have had the opportunity to observe and review numerous examples of child pornography (as defined in 18 U.S.C. §§2256) that were created, stored, distributed, or received via digital systems.  As a Special Agent, I am authorized to investigate

violations of 18 U.S.C. §§2251, 2252, and 2252A and to execute warrants issued under the authority of the United States.

3.      I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence, fruits, and instrumentalities related to violations of 18 U.S.C §§ 2422(b), 2252A(a)(2), and 2252A(a)(5).

4.      This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. This affidavit is based on my investigation as well as that of other law enforcement members.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

5.      The property to be searched is a black flash drive with an orange tag which says "Alan Liphart cell image," hereinafter the "Device."  The Device is currently located at 1830 2nd Ave #250, Rock Island, IL 61201.

6.      The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

7.      On May 25, 2020, the Wisconsin Department of Corrections issued an arrest warrant for Alan J. Liphart.  An Officer of the Darlington (Wisconsin) Police Department, who had prior knowledge of Liphart, was assigned to arrest Liphart at his residence in Darlington, WI.  The officer knew Liphart, as a condition of his supervised release, was not to be in possession of a cell phone.  During the course of arresting Liphart, the officer saw a cell phone

2

on Liphart's bedside nightstand.  The officer asked Liphart to give the cell phone to him and Liphart did.

8.      The cell phone was then turned over to an Agent of Wisconsin Probation and Parole.  They conducted a brief examination of the phone.  Based on their observations, they applied for, and received a state of Wisconsin search warrant.  Detective Paul Klang, of the Lafayette County Sheriff's Office, conducted a forensic exam of the cell phone and extracted data from it. The extracted data from the cell phone was placed on the Device.

9.      During a review of the extracted data, Detective Klang located a series of text messages and pictures between Liphart and another individual, eventually identified as then-minor victim "NC."  These texts seem to indicate Liphart desired to meet NC for the purpose of sex. The messages also contained nude pictures of both individuals that they sent to each other. One of the images located within the exchange depicts NC sitting on a toilet with his erect penis in the fingertips of his left hand. The messages would eventually imply that Liphart and NC had met for sex in Rock Island, IL, on November 14, 2015. During their exchanges, Liphart implies an offer to pay NC for sex.

10.     Additionally, located on the cell phone was a photograph depicting a prepubescent male preforming oral sex on an adult male. Your affiant is unaware as to who is depicted in this image.

11.     On June 4, 2020, Darlington Police Department provided the Rock Island Police Department with written copies of this information. Based on those reports and additional

3

investigation your affiant was able to locate the individual believed to be NC residing in the Central District of Illinois.

12.     On June 11, 2020, NC was interviewed by your affiant and Det. Tina Noe of the Rock Island Police Department.  NC confirmed that he would have been fourteen (14) years-old in November of 2015. NC recalled meeting a man for sex in Rock Island, IL on November 14, 2015. NC advised that he first met the man on Grindr and the two began exchanging messages and photographs. NC was able to identify a photo of Liphart, from the text message exchange, as the person he had sex with on November 14, 2015. NC indicated that Liphart paid him $100 for the sexual encounter.

13.     NC confirmed the text messages located on Liphart's phone were his communications with the man he met for sex in November 2015. Further, NC was able to independently corroborate many details of the sexual encounter.

14.     On February 11, 2021, I received a flash drive containing a copy of the full extraction of data recovered from Liphart's previously seized cell phone from Det. Klang.

15.     The Device is currently in the lawful possession of the U.S. Secret Service.  It came into the U.S. Secret Service's possession in the following way:  Det. Paul Klang, Lafayette (Wisconsin) County Sheriff's Office sent your affiant the flash drive via UPS at the request of your affiant. Therefore, while the U.S. Secret Service might already have all necessary authority to examine the Device, I seek this additional warrant out of an abundance of caution to be certain that an examination of the Device will comply with the Fourth Amendment and other applicable laws.

4

16.     The Device is currently in storage at 1830 2nd Ave #250, Rock Island, IL.  In my training and experience, I know that the Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of the U.S. Secret Service.

## TECHNICAL TERMS

17.     Based on my training and experience, I use the following technical terms to convey the following meanings:

a.  Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

5

b.  Digital camera:  A digital camera is a camera that records pictures as digital
    picture files, rather than by using photographic film.  Digital cameras use a
    variety of fixed and removable storage media to store their recorded images.
    Images can usually be retrieved by connecting the camera to a computer or by
    connecting the removable storage medium to a separate reader.  Removable
    storage media include various types of flash memory cards or miniature hard
    drives.  Most digital cameras also include a screen for viewing the stored images.
    This storage media can contain any digital data, including data unrelated to
    photographs or videos.

c.  Portable media player:  A portable media player (or "MP3 Player" or iPod) is a
    handheld digital storage device designed primarily to store and play audio, video,
    or photographic files.  However, a portable media player can also store other
    digital data.  Some portable media players can use removable storage media.
    Removable storage media include various types of flash memory cards or
    miniature hard drives.  This removable storage media can also store any digital
    data.  Depending on the model, a portable media player may have the ability to
    store very large amounts of electronic data and may offer additional features such
    as a calendar, contact list, clock, or games.

d.  GPS:  A GPS navigation device uses the Global Positioning System to display its
    current location.  It often contains records the locations where it has been.  Some
    GPS navigation devices can give a user driving or walking directions to another
    location.  These devices can contain records of the addresses or locations involved

6

in such navigation.  The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth.  Each satellite contains an extremely accurate clock.  Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers.  These signals are sent by radio, using specifications that are publicly available.  A GPS antenna on Earth can receive those signals.  When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e.  PDA:  A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs.  Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail.  PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can store any digital data.  Most PDAs run computer software, giving them many of the same capabilities as personal computers.  For example, PDA users can work with word-processing documents, spreadsheets, and presentations.  PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

    f.   IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet.  An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination.  Most Internet service providers control a range of IP addresses.  Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

    g.   Internet: The Internet is a global network of computers and other electronic devices that communicate with each other.  Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

18.    Based on my training, experience, and research, and from consulting the manufacturer's advertisements and product technical specifications, I know that the Device has capabilities that allow it to serve as a mass storage device for electronic files.  In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

8

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

19.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

20.     *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the Device because:

a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b.  Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

9

d.  The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves.  Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

21.    *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

22.    *Manner of execution.*  Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

23.     Based on the foregoing, your affiant asserts that there is probable cause to believe

that evidence involving violations of 18 U.S.C §§ 2422(b), 2252A(a)(2), and 2252A(a)(5) exist

on the Device. Therefore, your affiant requests a search warrant  authorizing the examination of

the Device described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

s/Cristopher Berry

Cristopher T. Berry
Senior Special Agent
United States Secret Service

Sworn to me over the telephone and
signed by me pursuant to Fed.R.Crim.P.41
on this ___3___ day of June, 2021.

s/Jonathan E Hawley

Honorable Jonathan E. Hawley
United States Magistrate Judge

11

## ATTACHMENT A

The property to be searched is a black flash drive with an orange tag which says "Alan Liphart cell image," hereinafter the "Device." The Device is currently located at 1830 2nd Ave #250, Rock Island, IL 61201.



This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

**ATTACHMENT B**

1.      All records on the Device described in Attachment A that relate to violations of
18 U.S.C §§ 2422(b), 2252A(a)(2), and 2252A(a)(5) and involve Alan Liphart since August 1,
2015, including:

   a.   Any and all notes, documents, records, or correspondence, in any format and
        medium (including, but not limited to, e-mail messages, chat logs and electronic
        messages);

   b.   Any and all diaries, address books, names, and lists of names and addresses of
        individuals who may have been contacted by the use of the phone or by other
        means;

   c.   Any and all notes, documents, records, or correspondence, in any format or
        medium (including, but not limited e-mail messages, chat logs and electronic
        messages), identifying persons transmitting, through interstate or foreign
        commerce by any means, any information relating to the enticement of minors.

   d.   Any and all notes, documents, records, or correspondence, in any format or
        medium (including, but not limited to, e-mail messages, chat logs and electronic
        messages, and other digital data files) concerning communications between
        individuals about the enticement of minors or the existence of other web sites or
        mobile applications used to locate minors for the purpose of enticing the minors
        into illegal sexual activity.

e. Any and all records, documents, invoices and materials, in any format or medium (including, but not limited to, e-mail messages, chat logs and electronic messages, and other digital data files) concerning membership in online groups, clubs, or services that provide or make accessible minors for the purpose to engage in illegal sexual activity with the minors.

f. Any and all records, documents, invoices and materials, in any format or medium (including, but not limited to, e-mail messages, chat logs and electronic messages, and other digital data files) that concern any accounts with an Internet Service Provider.

g. Any and all records, documents, invoices and materials, in any format or medium (including, but not limited to, e-mail messages, chat logs and electronic messages, and other digital data files) that concern online storage or other remote computer storage, including, but not limited to, software used to access such online storage or remote computer storage, user logs or archived data that show connection to such online storage or remote computer storage, and user logins and passwords for such online storage or remote computer storage.

h. Any and all visual depictions of minors.

i. Any and all electronic diaries, notebooks, notes, and any other records reflecting personal contact and any other activities with minors visually depicted while engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

2

j.   Evidence of user attribution showing who used or owned the Device at the time
the things described in this warrant were created, edited, or deleted, such as logs,
phonebooks, saved usernames and passwords, documents, and browsing history;

k.   Records of Internet activity, including firewall logs, caches, browser history and
cookies, "bookmarked" or "favorite" web pages, search terms that the user
entered into any Internet search engine, and records of usertyped web addresses.

l.   all bank records, checks, credit card bills, account information, and other financial
records.

As used above, the terms "records" and "information" include all of the foregoing items
of evidence in whatever form and by whatever means they may have been created or stored,
including any form of computer or electronic storage (such as flash memory or other media that
can store data) and any photographic form.

3